2021 IL App (1st) 190249-U

No. 1-19-0249

Order filed June 29, 2021

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 08 CR 182 |
| | ) | |
| BENNIE CASEY, | ) | Honorable |
| | ) | Stanley Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE SMITH delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court's summary dismissal of defendant's *pro se* postconviction petition is affirmed when the order was entered within 90 days of the petition's filing and the petition failed to make an arguable claim of ineffective assistance of counsel.

¶ 2    Defendant Bennie Casey appeals from the summary dismissal of his *pro se* petition for relief filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2018)). On appeal, he contends this cause must be remanded for further proceedings under the Act because the circuit court's order summarily dismissing the petition was not entered "of record"

within 90 days of the petition's filing. In the alternative, defendant contends that the petition made an arguable claim that trial counsel was ineffective for failing to investigate and present defendant's alibi. We affirm.

¶ 3     Following a jury trial, defendant was found guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2006)) and sentenced to 45 years in prison. Defendant's conviction arose from the November 18, 2007 shooting death of Derrick Smith. Defendant and William Anderson were tried in separate but simultaneous jury trials.[1]

¶ 4     Erick Smith, Derrick's twin, testified that Derrick was a member of the Four Corner Hustler street gang and that at time of the shooting there was a dispute between the Four Corner Hustlers and the Gangster Disciple Travelers (GDT) street gang. Defendant, who was a GDT, was feuding with a Four Corner Hustler named Rooster. Defendant and Roster had an encounter hours before Derrick's death, and Derrick's death was "retaliation."

¶ 5     On the night of November 17, 2007, Erick and Derrick were on the second-floor landing of a building in the Henry Horner Homes in Chicago. The brothers chatted and smoked marijuana while Derrick sold drugs. Around 5:30 a.m. on November 18, 2017, Erick encountered defendant and Anderson on the ground floor. Defendant grabbed Erick's collar, pointed a firearm at his stomach, and said, "Get the f*** out of the building." Erick exited, but stopped when he realized Derrick was not with him. He went back inside and saw defendant shoot Derrick. Defendant and Anderson chased Erick. Defendant pointed his firearm at Erick and said, "I better not hear shit else about this" before fleeing.

---

[1] Anderson was found guilty of first degree murder and sentenced to 45 years in prison. See *People v. Anderson*, 2013 IL App (1st) 102852-U. He is not a party to this appeal.

¶ 6 Tongula "Turk" Ayers testified that she purchased drugs from Derrick and went downstairs. There, she saw defendant and Anderson holding firearms. The men told Ayers and her friend Shanice Wright to "get the f*** out of the building." Ayers stayed in the area because her bicycle was inside the building, and she saw Erick exit and then reenter the building. Ayers then heard a gunshot and saw defendant and Anderson run out of the building holding firearms. Erick also exited the building, yelling that "they shot my brother."

¶ 7 Wright testified that as she waited for Ayers on the ground floor of the building, she encountered defendant and Anderson, both of whom were armed. Anderson pointed his firearm at her and told her to be quiet. When Ayers came downstairs, Anderson told the women to "get the f*** out of the building." Wright and Ayers complied, and Wright left with a friend.

¶ 8 The jury found defendant guilty of first degree murder. Defendant filed a *pro se* motion for a new trial. Upon questioning by the court, trial counsel represented that defendant did not wish to raise any claims of ineffective assistance of counsel. Defendant then filed, through counsel, a motion and an amended motion for a new trial.

¶ 9 On January 12, 2011 and April 11, 2011, defendant filed *pro se* posttrial motions alleging ineffective assistance of pretrial and trial counsel. Relevant here, the motions alleged that pretrial and trial counsel failed to investigate and present witnesses to establish he was at home during the offense and Anderson had borrowed his cell phone and vehicle. The motion asserted that defendant's girlfriend Marlyn Jackson's statement and her mother Patricia Profit's affidavit

established that defendant was at home.[2] The motions acknowledged that pretrial and trial counsel did not investigate defendant's alibi defense because of cell phone records, but argued that these records showed that defendant's phone called Marlyn's phone, which would have "corroborated" an alibi defense.

¶ 10    At the hearing on defendant's motions, defendant argued, in pertinent part, that trial counsel failed to investigate certain individuals although defendant provided "some nicknames and things like that and possible areas where they could be found and possible blocks *** they live on." Defendant further stated that trial counsel failed to speak to Anderson in order to determine whether Anderson wanted to make a statement in court on defendant's behalf. Defendant told the court he obtained an exonerating affidavit from Anderson. He also argued that although he told trial counsel that Marlyn and Patricia would testify that defendant was at home at the time of the offense, trial counsel did not present them at trial. Defendant told the court that he had an affidavit "right here" from Patricia averring that defendant was at "home with her."

¶ 11    Upon questioning by the trial court, trial counsel stated that he spoke with the alibi witnesses. However, based upon cell phone records showing the towers from which defendant's cell phone "bounced," the proposed testimony "appeared to be false." Counsel chose not to present these witnesses because the State would "put those phone records in and it was going to look even worse than it did." Defendant responded that the records did not mean he was "in possession of this phone."

---

[2] The record reveals that Marlyn Jackson is also referred to as Marlyn Jackson-Bey and Patricia Profit is also known as Patricia Jackson and Patricia Jackson-Profit. For clarity, we will refer to them by their given names. Additionally, although the motion stated that Patricia's affidavit was attached, it was not.

¶ 12 Defendant then argued that he had an affidavit from Anderson stating that defendant was not involved in the crime, and the court responded that was not an appropriate argument to raise when seeking a new trial based on counsel's alleged ineffectiveness. Defendant stated that Anderson's affidavit was dated August 27, 2010, after trial, because trial counsel did not "confer" with Anderson as defendant requested. Trial counsel responded that Anderson's trial attorney would not permit Anderson to testify that he was present for the shooting and defendant was not. The court denied defendant's *pro se* posttrial motions.

¶ 13 The court then heard argument on the motion and amended motion for a new trial, denied defendant a new trial, and sentenced him to 45 years in prison. We affirmed on direct appeal. See *People v. Casey*, 2015 IL App (1st) 123241-U.

¶ 14 On June 6, 2017, defendant filed a *pro se* postconviction petition. On June 15, 2017, the circuit court granted defendant's *pro se* motion to withdraw that petition.

¶ 15 On June 5, 2018, defendant filed a *pro se* postconviction petition alleging actual innocence and ineffective assistance of counsel when, relevant here, trial counsel failed to investigate defendant's alibi. The petition asserted that trial counsel knew Marlyn, Patricia, and phone records indicated that defendant was home during the offense but that his cell phone was elsewhere. The petition further claimed that had counsel investigated defendant's alibi, he would have discovered this account was "corroborated" by Jarrett Lacey-El and Charles Crosby.[3] The petition also argued that defendant was denied effective assistance when counsel on direct appeal failed to challenge trial counsel's failure to investigate defendant's alibi. Attached in support were, *inter alia*, phone

---

[3] Jarrett Lacy-El is also referred to as Jarrett Lacy in the record.

records, a list of witnesses with summaries of their statements, and the affidavits of defendant, Anderson, Lacey-El, Crosby, and Patricia.

¶ 16    The list of witnesses included defendant's girlfriend Marlyn and stated that she testified before the grand jury that defendant was present when she went to sleep around 1 a.m. on November 18, 2007, when she woke twice during the night, and when she woke at 9 a.m.; however, she was a "pretty hard sleeper" and if defendant had gotten up during the night she may not have noticed. According to this list, Marlyn further testified before the grand jury that defendant did not "mention" someone borrowed his phone.

¶ 17    In his affidavit, defendant averred that he told trial counsel that he did not belong to the Gangster Disciples, and that Anderson borrowed his vehicle and cell phone on November 17, 2007, and did not return the items until the following morning. Trial counsel "refused" to speak to Anderson or present Marlyn, Patricia, and other members of Marlyn's family at trial. Defendant further averred that he lost contact with Marlyn and was unable to obtain her affidavit.

¶ 18    In an April 2017 affidavit, Anderson averred that around 11 p.m. on November 17, 2007, he borrowed defendant's vehicle and cell phone, and then drove to Lockwood Avenue and Chicago Avenue to pick up Lacey-El. They drove to Wheaton, and then back to Chicago to pick up "Charles." The group attended a party at the Henry Horner Homes, and Anderson returned the vehicle to defendant around 6 a.m. In an April 2018 affidavit, Anderson averred that defendant was not a Gangster Disciple and that defendant's trial counsel refused to speak to him.

¶ 19    In a December 2016 affidavit, Lacey-El averred that shortly before midnight on November 17, 2007, Anderson came to his home in defendant's vehicle, and they ran errands, picked up Charles, and went to the Henry Horner Homes. They returned the vehicle to defendant's home in

Berwyn around 6 a.m. The following day, defendant said that someone was killed in the "project building" and was worried about blame since someone had tried to "jump" him there the previous day. Defendant contacted Lacey-El from jail to request an affidavit; he agreed and gave it to defendant's "Baby's Mother." However, Lacey-El lost contact with defendant and was never contacted by an attorney.

¶ 20   Crosby, who was distantly related to defendant, averred that Anderson and Lacey-El picked him up in defendant's vehicle round 1:30 a.m. on November 18, 2007, and dropped him off around 2:30 a.m. Defendant reached out for help several times, but Crosby lost touch with defendant and was not contacted by an attorney before defendant's trial.

¶ 21   In her June 2010 affidavit, Patricia averred that defendant and Marlyn arrived home between 11 p.m. and 11:15 p.m. on November 17, 2007, and she saw defendant in the house several times before she went to bed around 2 a.m. Around 6 a.m. the next morning, defendant called from the basement asking to borrow her vehicle and she agreed. Patricia averred that she told this information to pretrial counsel.

¶ 22   On September 4, 2018, the circuit court reviewed the case's procedural history and the claims raised in the postconviction petition. The court found that defendant failed to establish a colorable claim of actual innocence and that the issues raised were frivolous and patently without merit. Relevant here, the court determined that the affiants did not establish an alibi when they saw defendant before and after the shooting, but were not with defendant at the time of the shooting.

¶ 23   The court stated that it summarily dismissed the petition "as of now," and that the "ruling will be typed up and made part of the record" on September 18, 2018. The half-sheet entry for

September 4, 2018, states that the petition was dismissed and the case was continued for a "written order." The criminal disposition sheet for September 4, 2018, states that the petition was dismissed.

¶ 24    On September 18, 2018, the court stated that it was "getting the transcript" and continued the case. On October 12, 2018, the court stated that there was "an oral ruling" on September 4, 2018, and that the case was continued "thereafter for the transcript of that hearing and ruling to be filed." The order of September 4, 2018, would stand, and defendant would receive a copy of that date's transcript. The half-sheet entry and criminal disposition sheet for October 12, 2018, reiterate the court's oral statements, with the latter adding that a copy of the ruling would be sent to defendant.

¶ 25    The certified report of disposition sent to defendant states, "The following disposition was rendered *** ON SEPTEMBER 04, 2018. ATTACHED IS A COPY OF THE COURT'S RULING ON 10/12/18." The half-sheet entry for October 18, 2018, states that notification of the dismissal and the court's order was sent to defendant by certified mail.

¶ 26    On November 8, 2018, defendant mailed a *pro se* motion for reconsideration which was filed in the circuit court on November 19, 2018. The circuit court denied the motion on December 7, 2018. On January 11, 2019, defendant filed a *pro se* notice of appeal, which identified September 4, 2018, as the date that the petition was dismissed.

¶ 27    On appeal, defendant first contends that the cause must be remanded for additional proceedings under the Act because the circuit court's order summarily dismissing the petition was not entered of record within 90 days. He argues that although the court made an oral pronouncement on September 4, 2018, that the petition was summarily dismissed, the court did not "actually enter" its order until October 12, 2018, beyond the 90 days permitted by the Act. He

further contends that regardless of the date of the petition's dismissal, further proceedings are warranted because the petition raised an arguable claim of ineffective assistance of trial counsel for failure to investigate and present witnesses in support of defendant's alibi defense.

¶ 28     Although neither party addresses this court's jurisdiction, we have a duty to determine our jurisdiction even when neither party raises the issue. *People v. Smith*, 228 Ill. 2d 95, 104 (2008). Here, the record reveals a question regarding the timeliness of defendant's notice of appeal where the parties dispute the date when the circuit court's order summarily dismissing the petition was entered of record. Because the timeliness of defendant's notice of appeal is a function of the date the subject order was entered, we must determine that date as a threshold issue for determining our jurisdiction.

¶ 29     The Act provides a procedural mechanism through which a defendant may assert a substantial denial of his constitutional rights in the proceedings which resulted in his conviction. 725 ILCS 5/122-1 *et seq*. (West 2018). When the circuit court summarily dismisses a postconviction petition, the Act provides that the court is to enter a "written order" within 90 days of the "filing and docketing" of the petition. 725 ILCS 5/122-2.1(a)(2) (West 2018). The 90-day period is mandatory, not directory. *People v. Brooks*, 221 Ill. 2d 381, 389 (2006). The written order should specify "the findings of fact and conclusions of law [the court] made in reaching its decision." 725 ILCS 5/122-2.1(a)(2) (West 2018). "Such order of dismissal is a final judgment and shall be served upon the petitioner by certified mail within 10 days of its entry." *Id*. The court's judgment is considered entered on the date it is entered of record. *People v. Perez*, 2014 IL 115927, ¶ 15; see also Ill. S. Ct. R. 272 (eff. Jan. 1, 2018). If an order is not entered within 90 days, the petition advances to the second stage of proceedings under the Act. *Perez*, 2014 IL 115927, ¶ 29.

¶ 30 Here, defendant's petition was filed on June 5, 2018. Monday, September 3, 2018, was a court holiday. On September 4, 2018, 91 days later, the circuit court orally reviewed the issues raised in the petition and found that defendant failed to establish a claim of actual innocence, and further, that the issues were frivolous and patently without merit. The court stated that the petition was dismissed "as of now," and that the "ruling will be typed up and made part of the record" on September 18, 2018. The dismissal is also reflected on the half-sheet and the criminal disposition sheet for September 4, 2018.

¶ 31 Defendant, however, argues that the court intended to enter its ruling of record at a later date when it stated on September 4, 2018, that the "ruling will be typed up" and the half-sheet states that the cause was continued "for entry of ruling." He notes that he was not sent a notice of the circuit court's September 4, 2018 oral ruling until after that ruling was entered of record on October 12, 2018. In support, defendant relies on *Perez*, 2014 IL 115927 and *People v. Cooper*, 2015 IL App (1st) 132971.

¶ 32 In *Perez*, our supreme court addressed whether the circuit court complies with the Act's 90-day requirement "when it signs and dates an order of dismissal on the ninetieth day after the petition is filed and docketed, but the order is not filed by the clerk until the ninety-first day." *Perez*, 2014 IL 115927, ¶ 1. The court explained that the determinative question was when the circuit court entered the order for purposes of the Act. *Id.* ¶ 13.

¶ 33 The court rejected the State's argument that the order was entered when the judge signed it because "if the judge signed the order, placed it in his outbox, locked his office door, and went on vacation for a week, the clock would be ticking on [the] defendant's appeal rights, even though no one but the judge would have any idea that an order had been entered." *Id.* ¶ 21. The court also

rejected the defendant's argument that had the judge announced in open court that the petition was dismissed within 90 days, the Act would have been satisfied because "the statute requires something *more* than public expression." (Emphasis in original.) *Id.* ¶ 23. That is, section 122-2.1(a) of the Act requires the court to "*enter* its *final written judgment* order, specifying findings of facts and conclusions of law, within 90 days." (Emphasis in original.) *Id.* The court recognized that the "90-day period in section 122-2.1(a) is intimately tied together with the notice of appeal period," and pursuant to that section of the Act and Rule 272, "the court's decision is 'entered,' and the appeal period commences, when the judgment is placed of record." *Id.* ¶ 25.

¶ 34 In *Cooper*, this court further examined the issue of when a judgment is placed "of record." In that case, the defendant's *pro se* postconviction petition was summarily dismissed by the circuit court as memorialized on the circuit court's half-sheet and in a written notice and a criminal disposition sheet, both of which were sent to the defendant. *Cooper*, 2015 IL App (1st) 132971, ¶ 7. However, the record did not contain a transcript for that date. *Id.*

¶ 35 On appeal, we noted that the record did not contain either a written order or oral pronouncement stating the circuit court's basis for summarily dismissing the petition. *Id.* ¶ 10. We relied on the *Perez* court's holding that the circuit court summarily dismisses a postconviction petition when its decision is entered of record to determine that the circuit court dismissed the defendant's petition on the date that the court communicated its decision to the clerk of the court and spread it of record by the half-sheet entry. *Id.* ¶ 14. We noted, as further evidence of the order, that the certified report of disposition sent to the defendant referred to the dismissal. *Id.*

¶ 36 In the case at bar, although the circuit court's oral pronouncement on September 4, 2018, taken alone, was insufficient to enter the dismissal of record (*Perez*, 2014 IL 115927, ¶ 23), further

evidence of the dismissal is evidenced by the September 4, 2018 half-sheet and criminal disposition sheet entries and the certified report of disposition sent to defendant stating the order of September 4, 2018, dismissing the petition would stand.

¶ 37    To the extent defendant argues that the circuit court's statement continuing the matter until September 18, 2018, in order that the "ruling will be typed up and made part of the record" reflected that the ruling itself would be entered at a later date, we disagree. Taken in context, the court's statement indicated that the transcript of the ruling would be filed on September 18, 2018, rather than the ruling itself. Specifically, the court found that the petition failed to make a colorable claim of actual innocence and that the issues therein were frivolous and patently without merit, dismissed the petition, and ordered the court reporter to prepare the transcript. The court then stated its "ruling will be typed up and made part of the record" on September 18, 2018, that is, the transcript would be filed on that date. Similarly, the court stated on October 12, 2018, that although the petition was dismissed, the case was continued "for the transcript of that hearing and ruling to be filed." Consequently, the circuit court's order summarily dismissing defendant's *pro se* postconviction petition was entered on September 4, 2018.

¶ 38    This conclusion comports with our recent holding in *People v. Brewer*, 2021 IL App (1st) 182638.[4] In that case, the defendant filed a *pro se* postconviction on July 12, 2018. *Id.* ¶ 7. On October 10, 2018, the circuit court orally reviewed the procedural history and the claims raised in the petition, found them frivolous and patently without merit, and summarily dismissed the petition. *Id.* ¶ 9. The court then also stated, relevant here, that the court reporter would prepare the

---

[4] *Brewer* was released as an unpublished order on May 18, 2021. On May 19, 2021, after the present case was fully briefed, the State filed a motion to cite *People v. Brewer*, 2021 IL App (1st) 182638-U, as additional persuasive authority pursuant to Supreme Court Rule 23(e) (eff. Jan. 1, 2021). We granted the State's motion on May 26, 2021. That day, we also granted the State's motion to publish *Brewer*.

transcript for the court's review, and that the case was " 'continued to 10/25 for the filing of the oral ruling made by me today. As of today, however, the petition is dismissed.' " *Id*. The October 10, 2018 criminal disposition sheet also stated the petition was dismissed by the court's oral ruling. *Id*.

¶ 39   On October 30, 2018, the court noted that its previous order dismissing the defendant's postconviction petition would stand and that the transcript of the ruling would be filed that day. *Id*. ¶ 11. The half-sheet and criminal disposition sheet for October 30, 2018, and the certified report of proceedings sent to the defendant also stated that the court's previous order would stand. *Id*. ¶¶ 12, 14.

¶ 40   On appeal, the defendant contended that the cause must be remanded for additional proceedings under the Act when although the court made an oral pronouncement on October 10, 2018, that the petition was summarily dismissed, the court did not " 'actually enter' " its order of record until October 30, 2018, beyond the 90 days permitted by the Act. *Id*. ¶ 16.

¶ 41   Relying on *Perez* and *Cooper*, we determined that although the court's oral pronouncement on October 10, 2018, alone, was insufficient to enter the dismissal of record, the October 10, 2018, criminal disposition sheet and certified report of disposition sent to the defendant further evidenced the dismissal. *Id*. ¶¶ 22-26. We additionally noted that the circuit court's statement that the case was continued " 'for the filing of the oral ruling' " indicated the transcript, rather than the ruling, would be filed at a later date. *Id*. ¶ 27. While we acknowledged that the half-sheet for October 10, 2018, did not address the dismissal, we rejected the defendant's argument that this omission negated the court's oral ruling and the two documents memorializing that ruling. *Id*. ¶ 27. We

therefore concluded that the circuit court's order was entered on October 10, 2018, in compliance with the Act. *Id.*

¶ 42    As in *Brewer*, here, the circuit court's oral pronouncement on September 4, 2018, alone, was insufficient to enter the dismissal of record. However, the court's oral pronouncement was buttressed by the September 4, 2018 half-sheet and criminal disposition sheet entries and the certified report of disposition sent to defendant stating the order of September 4, 2018, dismissing the petition would stand. Moreover, as in *Brewer*, the court's statement that the "ruling will be typed up and made part of the record" indicated that the transcript of the ruling, not the ruling itself, would be filed on September 18, 2018.

¶ 43    Having found that the circuit court summarily dismissed the petition on September 4, 2018, we must now determine our jurisdiction to consider defendant's appeal.

¶ 44    Pursuant to section 122-2.1(a)(2) of the Act, when

"the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision. Such order of dismissal is a final judgment and shall be served upon the petitioner by certified mail within 10 days of its entry." 725 ILCS 5/122-2.1(a)(2) (West 2018).

¶ 45    The record reflects that notice of the court's order was not mailed to defendant until October 12, 2018, in violation of both section 122-2.1(a)(2) of the Act and Supreme Court Rule 651(b). See Ill. S. Ct. R. 651(b) (eff. July 1, 2017) ("[u]pon the entry of a judgment adverse to a petitioner in a postconviction proceeding, the clerk of the trial court shall at once mail or deliver to the petitioner a notice" of the court's order). On November 8, 2018, defendant mailed a *pro se*

motion for reconsideration which was filed in the circuit court on November 19, 2018. The circuit court denied the motion on December 7, 2018, and defendant filed a *pro se* notice of appeal from that judgment.

¶ 46 However, the circuit court summarily dismissed the petition on September 4, 2018, which was a final order. Defendant's *pro se* motion to reconsider was not filed until November 19, 2018, more than 30 days after the judgment. Because defendant failed to file either a motion to reconsider or a notice of appeal within 30 days of the judgment, the circuit court lost jurisdiction over the matter. See *People v. Bailey*, 2014 IL 115459, ¶ 14. As such, the court was without authority to consider the motion to reconsider, and defendant's subsequent notice of appeal was untimely.

¶ 47 In those cases where a defendant is not prejudiced by a violation of section 122-2.1(a)(2) of the Act, he requires no remedy. See *People v. Robinson*, 217 Ill. 2d 43, 47, 60 (2005) (determining that the defendant "require[d] no remedy because he was not prejudiced by" the two-day delay in serving the order dismissing his postconviction petition when he filed his notice of appeal on time). However, where the defendant is prejudiced, that is, his appeal is untimely because he was not notified of the entry of the challenged order in a timely manner, this court must treat his untimely notice of appeal as a petition for leave to file a late notice of appeal pursuant to Supreme Court Rule 606(c). See *People v. Fikara*, 345 Ill. App. 3d 144, 158 (2003); see also Ill. S. Ct. R. 606(c) (eff. July 1, 2017).

¶ 48 *Fikara* is instructive. In that case, the circuit court dismissed four of the allegations contained in the defendant's postconviction filings and granted a new sentencing hearing based on another. The defendant did not file his notice of appeal from the circuit court's dismissal order until after the new sentencing hearing. On appeal, the State argued that the reviewing court did not

have jurisdiction to consider the issues raised regarding the dismissed allegations because the notice of appeal was not timely filed.

¶ 49 The court first noted that "an order that disposes entirely of a postconviction petition is immediately appealable, even if the order does not ultimately dispose of the criminal proceedings against the defendant." *Id*. at 151. "Such an order, while not necessarily disposing of the criminal proceeding, nonetheless is a final disposition of the petition under the Act." *Id*. Thus, the circuit court's order dismissing the postconviction petition in part, granting the petition in part, vacating the defendant's sentence, and setting a new sentencing hearing "resolved all issues raised in the postconviction petition and was a final disposition of the petition under the Act." *Id*. at 152. The order was immediately appealable. *Id*. The court concluded that the defendant's failure to file a timely notice of appeal deprived it of jurisdiction. *Id*.

¶ 50 In a supplemental opinion upon denial of rehearing, the court considered the defendant's argument that the circuit court failed to order the clerk to provide the defendant with immediate notice of the adverse judgment, *i.e.*, the dismissal of certain claims raised in the postconviction petition as required by Rule 651(b), and that this failure should excuse the resulting untimely notice of appeal. *Id*. at 157-58. The court explained that "Rule 651(b) requires that, upon the entry of a judgment adverse to a defendant in a postconviction proceeding, the clerk of the trial court 'shall at once mail or deliver' to the defendant a notice advising him of the entry of the order and advising him of his right to appeal." *Id*. at 158. However, in that case, the clerk of the circuit court failed to provide the defendant with the required notice of the adverse judgment and the circuit court also failed to admonish the defendant about the finality of the order and the need to file a notice of appeal within 30 days. *Id*.

¶ 51 The court therefore determined that where Rule 651(b) has not been followed, "the reviewing court must treat a defendant's untimely notice of appeal as a petition for leave to file a late notice of appeal within the contemplation of Supreme Court Rule 606(c)." *Id*. "The reviewing court must then grant the petition and consider the merits raised in the defendant's appeal." *Id*. In other words, a "reviewing court must allow the filing of a late notice of appeal even when the six-month period for seeking leave to file a late notice of appeal provided in Rule 606(c) has already expired." *Id*. The court therefore determined that due to the circuit court's failure to "ensure compliance" with Rule 651(b), it must treat the untimely notice of appeal as a petition to file a late notice of appeal and consider the merits of the defendant's postconviction claims. *Id*.; see also *People v. Clark*, 374 Ill. App. 3d 50, 57-59 (2007).

¶ 52 We find the decision in *Fikara* to be well reasoned and agree with its analysis. Here, the circuit court summarily dismissed the instant petition on September 4, 2018, but the clerk of the circuit court did not send notification of the order to defendant until October 12, 2018. Based upon our reading of the record on appeal, the clerk of the circuit court failed to comply with Rule 651(b) (eff. July 1, 2017) by failing to provide defendant with the required notice of an adverse judgment in the instant postconviction proceeding. See *id*. ("[u]pon the entry of a judgment adverse to a petitioner in a postconviction proceeding, the clerk of the trial court shall at once mail or deliver to the petitioner a notice" of the court's order). As in *Fikara*, we must treat defendant's untimely notice of appeal as a petition to file a late notice of appeal and we therefore have jurisdiction to consider his appeal on the merits. See *Fikara*, 345 Ill. App. 3d at 158.

¶ 53 Defendant further contends that the circuit court erred when it dismissed the petition because it stated an arguable claim that trial counsel was ineffective for failing to investigate

defendant's alibi and present witnesses in support at trial. Defendant argues that these witnesses would have established that he was home during the shooting.

¶ 54    As noted, the Act allows a defendant to assert a substantial denial of his constitutional rights in the proceedings which resulted in his conviction. 725 ILCS 5/122-1 *et seq.* (West 2018). At the first stage of proceedings under the Act, the defendant files a petition, which the circuit court independently reviews and, taking the allegations as true, determines whether it is frivolous or is patently without merit. *People v. Tate*, 2012 IL 112214, ¶ 9. A petition should be summarily dismissed as frivolous or patently without merit only when it has no arguable basis in either fact or law. *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). A petition lacks an arguable basis in fact or law when it "is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. Fanciful factual allegations are those which are "fantastic or delusional," and an indisputably meritless legal theory is one that is "completely contradicted by the record." *Id.* at 16-17. We review the summary dismissal of a postconviction petition *de novo*. *Id.* at 9.

¶ 55    When raising a claim of ineffective assistance of trial counsel at the first stage of postconviction proceedings, the defendant must show both that counsel's performance was arguably deficient, and that he was arguably prejudiced by counsel's deficient performance, namely, that it affected the outcome of his trial. *Id.* at 17 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).

¶ 56    Here, defendant contends that counsel failed to investigate and present the alibi testimony of Marlyn, Patricia, Anderson, Lacey-El and Crosby. He argues that these witnesses would have placed him at home at the time of the shooting rather than with Anderson, and further, would have

explained why phone records showed his cell phone near the shooting, that is, Anderson possessed defendant's phone.

¶ 57 " 'Whether to call certain witnesses and whether to present an alibi defense are matters of trial strategy, generally reserved to the discretion of trial counsel.' " *People v. Jackson*, 2020 IL 124112, ¶ 106 (quoting *People v. Kidd*, 175 Ill. 2d 1, 45 (1996)). As a result, such decisions will not ordinarily support a claim for ineffective assistance of counsel and even "a mistake in trial strategy" will not, by itself, render representation constitutionally defective. *People v. Peterson*, 2017 IL 120331, ¶ 80.

¶ 58 Initially, we note that defendant raised this claim at the hearing on his *pro se* posttrial motion. There, defendant argued that he was denied effective assistance when he told trial counsel about his alibi and that Marlyn and Patricia would place him at home on the night of the shooting. Defendant further stated that he obtained an affidavit from Anderson exonerating him from involvement in the offense and asserted that he had an affidavit from Patricia on hand. While defendant did not produce an affidavit from Marlyn, the trial court asked trial counsel about defendant's claim and counsel stated that he spoke with defendant's alibi witnesses, and that based upon cell phone records showing the location of defendant's phone, the proposed testimony appeared to be false. Although defendant replied that the record only showed the location of the phone, not whether it was in his possession, the trial court denied the motion. Thus, whether defendant was denied effective assistance by trial counsel's failure to present Marlyn and Patricia in support of defendant's alibi at trial could have been raised on direct appeal, and is therefore forfeited in this postconviction proceeding. See *People v. Davis*, 2014 IL 115595, ¶ 13 (the Act allows inquiry into constitutional issues arising from the original conviction that had not been

raised and could not have been adjudicated on direct appeal; issues that could have been raised, but were not, are forfeited).

¶ 59    Moreover, the record reveals that trial counsel told the court at the hearing on defendant's *pro se* posttrial motions that he investigated defendant's alibi, but was concerned that the potential witnesses were untruthful because their testimony was contradicted by cell phone records. Counsel stated that presenting Marlyn's and Patricia's testimony at trial would have led to the admission of cell phone records which showed defendant's phone was not at home on the night of the shooting. Thus, defendant's claim that he was denied effective assistance by counsel's failure to investigate his alibi, and in particular Marlyn and Patricia, is contradicted by the record. See *Hodges*, 234 Ill. 2d at 16-17 ("an indisputably meritless legal theory is one which is completely contradicted by the record").

¶ 60    Defendant further argues that he was denied effective assistance by trial counsel's failure to present Anderson, Lacey-El, and Crosby because these witnesses would explain the phone records showing his cell phone near the scene of the shooting and support his alibi. At the outset, we note that defendant did not aver that he specifically identified Lacey-El and Crosby to trial counsel as alibi witnesses. Because the petition did not allege that counsel was told about these purported alibi witnesses by defendant, we cannot find that counsel was ineffective for failing to investigate or interview them. See *People v. English*, 403 Ill. App. 3d 121, 137-38 (2010). Moreover, neither affidavit speaks to defendant's location at the time of the shooting. With regard to Anderson, he averred that he borrowed defendant's vehicle and cell phone at 11 p.m. on November 17, 2007, and returned the items around 6 a.m. the following morning, that he told this information to his attorney, and tried to tell defendant's attorney, but that defendant's attorney

refused to speak with him. Even if this court were to overlook that Anderson and defendant were both charged with Derrick's murder and proceeded to simultaneous severed jury trials, Anderson did not aver that he was with defendant or knew defendant's location at the time of the shooting.

¶ 61    Accordingly, defendant cannot establish that he was arguably prejudiced by counsel's failure to present his alibi witnesses at trial, and his claim of ineffective assistance of counsel fails. See *Hodges*, 234 Ill. 2d at 16-17. The circuit court therefore properly summarily dismissed defendant's petition as frivolous and patently without merit. *Tate*, 2012 IL 112214, ¶ 9.

¶ 62    For the forgoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 63    Affirmed.