Docket No. 99293.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
CLAUDE BROOKS, JR., Appellee.

*Opinion filed May 18, 2006.*


JUSTICE FREEMAN delivered the judgment of the court,
with opinion.

Chief Justice Thomas and Justices Freeman, McMorrow,
Fitzgerald, Kilbride, Garman, and Karmeier concurred in the
judgment and opinion.


**OPINION**

Following a bench trial in the circuit court of Cook County, defendant, Claude Brooks, Jr., was convicted of the predatory criminal sexual assault of his eight-year-old stepdaughter. After the appellate court affirmed his conviction, defendant filed a *pro se* petition under the Post-Conviction Hearing Act (725 ILCS 5/122–1 *et seq.* (West 2002)) as well as a motion for DNA testing pursuant to section 116–3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116–3 (West 2002)). The circuit court summarily dismissed defendant's postconviction petition as frivolous and lacking merit and denied the motion for DNA testing. The appellate court affirmed in part, reversed in part, and remanded the matter for further proceedings. We granted the State's petition for leave to appeal (177 Ill. 2d R. 315) and now affirm in part and reverse in part the judgment of the appellate court.

## Background

At defendant's trial, the victim, L.N., testified that in 1997 she lived with her mother, brother, and defendant. On the evening of October 17, 1997, she was at the family's apartment alone with defendant. Before going to bed, L.N. took a bath and put on her two-piece pajamas. She then went into the dining room and lay down on a cot to watch television. Defendant, who was sitting in a chair near L.N.'s room, approached her and pulled down her pajama pants. Then, defendant pulled down his pants and climbed on top of L.N. L.N. testified that defendant's "private part" touched her "private part." L.N. testified that defendant was "pumping" on her and "going in and out" of her for about five minutes when her mother walked into the dining room. Defendant jumped up and pulled up his pants.

L.N. further testified that one morning, several days before her birthday, defendant entered the bedroom L.N. shared with her brother. Defendant woke her up and took off her pajamas. Defendant then disrobed and climbed on top of L.N. L.N. stated that defendant put his "private part" inside her "private part" and started "pumping" her. L.N. testified that after a few minutes, something came out of defendant's private part. L.N.'s brother was asleep at the time. L.N. did not shout or scream

when defendant was on top of her because she was afraid that he would hurt her. On October 19, 1997, L.N. went with her mother to the hospital and told doctors what had occurred between defendant and her. During cross-examination, L.N. admitted that she could not recall the dates of these events without her mother's help.

L.N.'s mother, LaDell, testified that she was married to defendant and lived with him and her two children at the time of the incidents in question. On October 17, 1997, LaDell left the apartment at about 8 p.m. At that time, defendant was in the master bedroom, and L.N. was taking a bath. L.N.'s brother was spending the night at a friend's house. LaDell returned to the apartment around 45 minutes later and discovered defendant on top of L.N. The child's legs were up in the air, and defendant was positioned between her legs. LaDell screamed for the defendant to get away from L.N. LaDell took her daughter into the master bedroom and asked L.N. whether this was the first time defendant had engaged in such behavior. L.N. responded in the negative. That night, LaDell slept in a chair by L.N.'s bedroom. LaDell could not call police because the family did not have a telephone in the apartment. LaDell did not leave the apartment until two days later when her best friend came to the apartment to pick her up. LaDell took L.N. with her. LaDell told her friend what had occurred, and they drove to the police station.

LaDell admitted to using crack cocaine after she had witnessed the incident between defendant and L.N. She further admitted that she had left the apartment to purchase cocaine to use with defendant.

Dr. Gail Allen, an assistant professor of pediatrics at the University of Chicago Children's Hospital, testified that on October 19, 1997, she was assigned to the emergency room where L.N. was admitted. Dr. Allen conducted an evaluation of L.N. for sexual assault. In a preliminary interview, L.N. told Dr. Allen that after she took a bath, defendant "began feeling on" her. L.N. stated that she pushed defendant away, but that he returned and "started doing it to" her. However, L.N. told Dr. Allen that she had not been vaginally penetrated at that time, but she had been in the past.

Dr. Allen performed a general physical examination of L.N., which revealed the presence of "whitish" or "yellowish" secretions just outside of L.N.'s vagina. Although L.N.'s hymen was intact, Dr. Allen found it significant that during her examination, she discovered the development of "whitish" scar tissue on the right side of L.N.'s hymen. Such a finding is consistent with chronic abuse. Dr. Allen collected physical evidence for analysis and recommended that L.N. be admitted to the chronic care facility of the hospital.

On cross-examination, Dr. Allen admitted that she was unable to find any acute evidence of sexual abuse aside from the abnormal secretions. She explained that the term "acute" referred to evidence of sexual abuse occurring within 72 hours after the alleged incident.

The parties stipulated that Jennifer Shultz, a forensic scientist, received the vaginal swabs taken from L.N. and determined that they contained semen. The parties further stipulated that Amy Rehemstrom, a forensic scientist, compared the DNA from defendant's blood samples to the DNA from the vaginal swabs and determined that no conclusion could be drawn as to the source of the semen.

Defendant's sole witness was Sergeant Kenneth Burke, a youth investigator for the Chicago police department. Burke had observed, on October 20, 1997, a victim-sensitive interview of L.N. at the hospital. He described L.N. as being very alert and articulate. He recalled L.N. telling the social worker that defendant "kept messing" with her and that he touched her private part while she was in the bathtub. L.N. denied that defendant touched her with his private part.

The circuit court found defendant guilty. Although the court acknowledged the chronological inconsistencies in L.N.'s testimony, he found her description of the events to be credible. The court also found LaDell's testimony credible as well despite her admitted use of cocaine. The court found the medical evidence of scar tissue to L.N.'s hymen to be consistent with sexual abuse and that the presence of semen suggested some contact. The court sentenced defendant to 22 years' imprisonment.

The appellate court affirmed the conviction, finding defendant's insufficiency of the evidence argument to be unpersuasive. *People v. Brooks*, No. 1–00–1176 (2002) (unpublished order under Supreme Court Rule 23).

Defendant thereafter sought postconviction relief. To that end, he filed a petition in which he asserted that his trial attorney was ineffective for failing to call two witnesses, defendant's mother and his brother. Defendant alleged in his petition that their trial testimony would have called into question LaDell's credibility. Defendant also alleged that his appellate counsel, who was also his trial counsel, was ineffective for failing to raise his own ineffectiveness on direct appeal. Defendant's petition was supported by affidavits from both his mother and his brother. After reviewing the affidavits, the circuit court summarily dismissed the petition as being without merit.

Defendant also filed with his postconviction petition a *pro se* motion to compel polymerase chain reaction DNA testing (PCR DNA testing) of the vaginal swab taken from L.N. This motion was made pursuant to section 116–3 of the Code of Criminal Procedure (725 ILCS 5/116–3 (West 2002)). The circuit court denied the motion.

Defendant appealed. The appellate court reversed the circuit court's summary dismissal of the postconviction petition because it found that the circuit court rendered the order more than 90 days after the date the petition was filed and docketed, in contravention of section 122–2.1 of the Post-Conviction Hearing Act (725 ILCS 5/122–2.1 (West 2002)). No. 1–03–0586 (unpublished order under Supreme Court Rule 23). With respect to defendant's request for new DNA testing, the appellate court affirmed the circuit court's denial of the request, holding that defendant did not establish, as required under the statute, that the vaginal swab was not subjected to PCR DNA testing at the time of trial. Other pertinent facts will be discussed within the body of the analysis.

Analysis

I

˘5˘

The State assigns error to the appellate court's conclusion that the circuit court's order of summary dismissal was void because it was rendered more than 90 days after the date the petition was filed and docketed. The State argues that the docketing requirement of section 122–2.1 of the Post-Conviction Hearing Act (725 ILCS 5/122–2.1 (West 2002)) is fulfilled on the date when the clerk of the court places it on the docket call of a trial judge with the authority to rule on it. Defendant, on the other hand, argues that the requirement is satisfied when the clerk of the court receives the petition.

The issue, as framed by the parties, involves the interpretation of a statute, which is a question of law that we review *de novo*. *People v. Donoho*, 204 Ill. 2d 159, 172 (2003). This court's primary objective when undertaking to interpret a statute is to give effect to the intent of the legislature, and the most reliable indicator of that intent is the language of the statute. *People v. Phelps*, 211 Ill. 2d 1, 15 (2004); *People v. Hanna*, 207 Ill. 2d 486, 497 (2003).

Section 122–1 of the Post-Conviction Hearing Act (the Act) provides that a postconviction proceeding "shall be commenced by filing with the clerk of the court in which the conviction took place a petition *** verified by affidavit." 725 ILCS 5/122–1(b) (West 2002). This same section also states that the "clerk shall docket the petition for consideration by the court pursuant to Section 122–2.1 upon his or her receipt thereof and bring the same promptly to the attention of the court." 725 ILCS 5/122–1(b) (West 2002). Section 122–2.1 provides:

> "(a) Within 90 days after the filing and docketing of each petition, the court shall examine such petition and enter an order thereon pursuant to this Section.
>
> * * *
>
> (b) If the petition is not dismissed pursuant to this Section, the court shall order the petition to be docketed for further consideration in accordance with Sections 122–4 through 122–6." 725 ILCS 5/122–2.1 (West 2004).

This court has previously recognized that the time requirement contained in section 122–2.1(a) is mandatory, not directory, and that a trial court's noncompliance with the time requirement renders any summary dismissal void. *People v. Porter*, 122 Ill. 2d 64, 86 (1988).

In this case, the record reveals that defendant placed his petition in the institutional mail at Centralia Correctional Center on September 9, 2002. The notice of filing accompanying defendant's petition was stamped "Received" by the clerk of the circuit court, criminal division, on September 13, 2002. That same notice of filing was also stamped "Filed" by Dorothy Brown, clerk of circuit court, on September 20, 2002. Defendant's actual *pro se* petition was stamped "Filed" by Dorothy Brown, clerk of circuit court, on September 20, 2002. On that same date, the clerk's office entered the following notation on the "half-sheet" of the case, numbered 97 CR 29342–01: "9/20/02 Petition for Post-Conviction Relief, Filed Hearing Date Set: 9/30/02." The half-sheet notation reveals that the case was assigned to Judge Dernbach from Judge Wood on September 30, 2002. Judge Dernbach summarily dismissed the case on December 18, 2002.

As noted above, the Act requires that within 90 days "after the filing and docketing" of the petition, the circuit court shall examine the petition. 725 ILCS 5/122–2.1(a) (West 2002). In this case, the parties focus on the meaning of the word "docketing." Defendant maintains, as did the appellate court, that the plain language of the Act establishes that the 90-day review period begins to run when a postconviction petition is received by the clerk of the circuit court, which in this case was on September 13, 2002. The State contends that the 90-day review period begins to run when the clerk of the court places the case on the call of a judge with authority to rule on it, which in this case was on September 30, 2002, the day on which the case was placed on the call of Judge Dernbach. Thus, the parties give different meanings to the word "docketing" as it is used in section 122–2.1(a) of the Act.

The Act does not define the word "docketing." As such, we must interpret it, and in so doing, we must give the word its plain, ordinary, and popularly understood meaning. *Carver v.*

*Sheriff of La Salle County*, 203 Ill. 2d 497, 507 (2003). When a term used by the legislature is clear and unambiguous, it is not necessary to resort to other aids of construction. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). According to Black's Law Dictionary, the word "docket," when used in its verb form, means "to make a brief entry in the docket of the proceedings and filings in a court case *** to abstract and enter in a book *** or to schedule (a case) for trial or some other event." Black's Law Dictionary 517 (8th ed. 2004). The standard dictionary meaning of the verb "docket" is "to make a brief abstract of (a legal matter) and inscribe it in a list." Webster's Third New International Dictionary 666 (1993). Clearly, then, the verb "docket"connotes more than the mere act of receiving the petition, as defendant suggests. To "docket" requires that the cause be entered in an official record. Nevertheless, we do not believe that the word "docket" entails that the case be placed on a specific call of a judge, as the State maintains. The plain meaning of the word connotes that the cause is entered on the court's official docket for further proceedings. The record here reveals that defendant's postconviction petition was "docketed" within the commonly understood meaning of the word on September 20, 2002, when the clerk of the court entered the petition into the case file and set it for a hearing. Thus, in this case, the clock began to run for purposes of the time requirement contained in section 122–2.1 on September 20, 2002.

In view of the above, we cannot agree with the appellate court that the summary order of dismissal entered by the circuit court was void. The circuit court entered the summary dismissal order on December 18, 2002, and the petition was docketed on September 20, 2002. As such, the circuit court's ruling occurred within the statutory time span allowed in section 122–2.1. The appellate court's conclusion to the contrary was erroneous.

II

In a request for cross-relief, defendant contends that the appellate court erred in affirming the circuit court's denial of his motion for DNA testing pursuant to section 116–3 of the Code

of Civil Procedure. In his motion to allow DNA testing, defendant had stated that none of the DNA material collected from him "was subjected to test [*sic*] requested. Now [defendant] request [*sic*] forensic (PCR DNA) testing." The defendant had also stated that "The DNA technology available today was not available at the time of trial." The circuit court denied the motion. The appellate court rejected defendant's claim of error on the grounds that defendant could not show that his evidentiary sample had not been previously subjected to PCR DNA testing at the time of his trial. No. 1–03–0568 (unpublished order under Supreme Court Rule 23).

In this court, defendant maintains that he made his *prima facie* case as required by section 116–3 by asserting that identity was at issue at the trial; that the vaginal swab was not subject to testing at the time of the trial; and that the evidence to be tested had been subject to a chain of custody sufficient to establish that it had not been substituted, tampered with, replaced, or altered in any material respect.

Section 116–3 of the Code provides:

"(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint or forensic DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, *but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial.* ***

(b) The defendant must present a prima facie case that:

(1) identity was the issue in the trial which resulted in his or her conviction; and

(2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect.

(c) The trial court shall allow the testing under reasonable conditions designed to protect the State's

interests in the integrity of the evidence and the testing process upon a determination that:

> (1) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence; [and]
>
> (2) the testing requested employs a scientific method generally accepted within the relevant scientific community." (Emphasis added.) 725 ILCS 5/116–3 (West 2002).

The denial of a request made pursuant to section 116–3 is subject to *de novo* review upon appeal. *People v. Shum*, 207 Ill. 2d 47, 65 (2003).

We agree with the appellate court's conclusion that to have granted defendant's request for retesting under these circumstances would have been contrary to both the express language of the statute and the intent of the legislature. The plain language of subsection (a) of section 116–3 requires that a defendant show (i) that the evidence in question was not subject to the requested test at the time of the trial and, (ii) that the reason it was not subject to testing is because *the technology for the requested test* was unavailable at the time of defendant's trial. *People v. Lamming*, 358 Ill. App. 3d 1153, 1156 (2005), quoting *People v. Franks*, 323 Ill. App. 3d 660, 662 (2001); *People v. Price*, 345 Ill. App. 3d 129 (2003). In his motion, defendant requested PCR DNA testing. The record indicates that the circuit court ordered the genetic samples collected from the victim tested for DNA analysis on November 8, 1999. Defendant's trial took place in January 2000. At the time of defendant's trial, the technology for PCR DNA testing was available and the method itself was recognized by the judiciary nationwide, including Illinois. See *People v. Pope*, 284 Ill. App. 3d 695, 703-05 (1996) (noting that PCR testing accepted by the scientific community and collecting cases); see also *United States v. Beasley*, 102 F.3d 1440, 1448 (8th Cir. 1996) (concluding that courts in the Eighth Circuit can take judicial notice of the general reliability of PCR DNA testing); *Harmon v. State*, 908 P.2d 434, 440 (Alaska App. 1995) (holding that there is little question concerning the scientific

acceptance of the theory underlying PCR DNA testing); *State v. Brown* 949 S.W.2d 639, 641 (Mo. App. 1997) (same); *Wood v. State*, 959 P.2d 1 (Okla. 1998); *Spencer v. Commonwealth*, 240 Va. 78, 393 S.E.2d 609 (1990). Thus, if the requested test was not done on the genetic samples collected from the victim, the reason it was not done *was not* because the technology for the testing was unavailable at the time of defendant's trial. However, that is the only reason the statute allows for granting a request. We hold that the circuit court did not err in denying defendant's request.

## Conclusion

In light of the foregoing, we reverse that portion of the appellate court's judgment which held the circuit court's summary dismissal of defendant's postconviction petition void. Consequently, we remand the matter to the appellate court in order for it to consider the remainder of defendant's appellate challenges to the circuit court's summary dismissal of his postconviction petition. We affirm the appellate court's judgment in all other respects.

*Appellate court judgment affirmed in part and reversed in part; cause remanded.*