# Illinois Official Reports

## Supreme Court

---

### *People v. Joiner*, 2024 IL 129784

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ANTUAN JOINER, Appellant. |
| Docket No. | 129784 |
| Filed | May 23, 2024 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Vincent M. Gaughan, Judge, presiding. |
| Judgment | Judgments affirmed. |
| Counsel on Appeal | Douglas H. Johnson, of Kathleen T. Zellner & Associates, P.C., of Warrenville, for appellant.<br><br>Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and Katherine M. Doersch and Jeremy M. Sawyer, Assistant Attorneys General, of Chicago, of counsel), for the People. |
| Justices | CHIEF JUSTICE THEIS delivered the judgment of the court, with opinion.<br>Justices Neville, Overstreet, Holder White, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1        Following a 2014 bench trial in the circuit court of Cook County, defendant Antuan Joiner was convicted of first degree murder (720 ILCS 5/9-1(a)(1) (West 2012)) and two counts of attempted murder (*id.* § 8-4(a)). The appellate court affirmed his convictions, remanded for a new sentencing hearing, and affirmed the new sentence imposed on remand. *People v. Joiner*, 2020 IL App (1st) 191506-U, ¶¶ 3-4. Through retained counsel, defendant subsequently filed a petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)), which the circuit court summarily dismissed as frivolous and patently without merit. Defendant appealed, arguing that the petition must be advanced to the second stage both because the circuit court failed to rule on it within 90 days after it was filed and docketed and because the claims had merit. The appellate court affirmed the circuit court's judgment. 2023 IL App (1st) 211553, ¶ 88. For the reasons that follow, we also affirm.

¶ 2                                                    BACKGROUND

¶ 3        Defendant was charged and convicted with the first degree murder of Shakaki Asphy and the attempted murders of Leon and Thomas Cunningham. The shooting occurred outside an abandoned building on the 2000 block of West 70th Place in Chicago. The indictment alleged that on June 16, 2012, defendant personally discharged a firearm in the direction of the victims and that his actions caused the death of Asphy and serious injury to Leon. At trial, Leon and Thomas both identified defendant as the individual who fired the gun at them and Asphy, as they had in an earlier photo array or lineup. Both Leon and Thomas knew defendant from the neighborhood, and Leon testified that defendant was a member of a rival street gang. Defendant was ultimately sentenced to 34 years' imprisonment.

¶ 4        The evidence admitted at defendant's bench trial in October 2014 is adequately set forth in the appellate court's opinion on direct appeal (*People v. Joiner*, 2018 IL App (1st) 150343) and in the opinion below (2023 IL App (1st) 211553). We therefore repeat only those facts pertinent to the issues raised in this appeal.

¶ 5        The record contains the circuit court of Cook County's electronic "Case Summary," which provides the circuit court clerk's office's chronological notations of the case's procedural events. The case summary in this case indicates that on July 7, 2021, defendant filed a postconviction petition. In that same entry, it states "PC FEE NOT PAID." The next entry indicates that on August 4, 2021, defendant filed a postconviction petition and states "PC FEE PAID THROUGH EFILE." A copy of the petition bearing a file stamp of both July 7 and August 4, 2021, appears in the record. The criminal disposition sheet for August 18, 2021, signed by the circuit court judge assigned to the case, also reflects that the petition was dated August 4, 2021, and that following a hearing, the matter was continued to August 30, 2021. The case was ultimately continued until November 1, 2021, when the circuit court ruled upon the petition.

¶ 6        Defendant alleged in his petition that trial counsel was ineffective for failing to call as witnesses Marquise Gist and Darkenya Donner and for failing to properly cross-examine Thomas and Leon. Defendant also alleged that the State committed a violation under *Brady v. Maryland*, 373 U.S. 83 (1963), asserting that, because Thomas and Leon had criminal backgrounds, the State must have offered them "favorable deals" for their testimony against

- 2 -

him. He also alleged that he was actually innocent of the crimes on the basis that the State likely offered Thomas and Leon favorable deals and their trial testimonies were questionable, the physical evidence did not implicate him, and Gist's and Donner's affidavits attached to his petition demonstrated that he was not the shooter.

¶ 7 In Gist's affidavit, he asserted that, in June 2012, he was friends with defendant and they hung out frequently. On the day of the shooting, he and defendant went to a park in the afternoon, where they talked and played basketball. Gist further asserted that, later in the afternoon or early evening, he and defendant left the park because they planned to smoke marijuana in an abandoned building. They "needed a blunt" to do so, and defendant "dropped [Gist] off" and rode to a gas station on his bike to get it. Defendant returned from the gas station, and he and Gist went into an abandoned building to smoke. The two then returned to the park, and someone there informed them that there had been a shooting. Gist asserted that the two stayed at the park until around 8 p.m. and that the next day he learned that defendant had been placed into custody.

¶ 8 In her affidavit, Donner asserted that, until the month of the shooting, she lived on the 2000 block of West 71st Street in Chicago, which was one block south of where the shooting occurred. While she lived there, she became familiar with defendant. On the day of the shooting, she no longer resided at that location but was visiting a former neighbor. During the visit, she observed two teenage boys, neither of whom were defendant, exit a gray vehicle on Seeley Avenue near West 71st Street. One of the boys was wearing a hooded sweatshirt. Donner observed the boys walk to West 71st Street, head east toward Damen Avenue, and then north through a vacant lot toward West 70th Place. Moments later, Donner heard gunshots coming from West 70th Place, and she saw the two boys walk south across West 71st Street and then through another vacant lot on the south side of West 71st Street.

¶ 9 Donner further asserted that, approximately one week later, she saw the boy who wore the hooded sweatshirt and took a picture of him with her cell phone. After doing so, she went to the police station, and two detectives interviewed her for about 30 minutes. At the end of the interview, a detective informed Donner that the police " '[h]ad their guy.' "

¶ 10 On November 1, 2021, the circuit court summarily dismissed defendant's petition. The dismissal occurred 117 days after counsel initially submitted it to the court's electronic filing system, and 89 days after the petition was filed with the August 4 date stamped on it and counsel paid the required fee. Concerning defendant's ineffective assistance of counsel claims, the trial court found that defendant forfeited them because they could have been raised on direct appeal. The circuit court also held that trial counsel's performance was not deficient and his alleged errors did not prejudice defendant. The circuit court further held that defendant's *Brady* claim was speculative since the court could not determine from the exhibits attached to the petition that the State offered any "favorable deals." Finally, the circuit court rejected defendant's actual innocence claim because the evidence on which he relied was not newly discovered, material, or of such conclusive character it would lead to a different result on retrial.

¶ 11 On appeal, defendant argued that the circuit court was required to advance his petition to the second stage because it did not rule on the petition within 90 days after it had been filed and docketed. 2023 IL App (1st) 211553, ¶ 44. The appellate court found that defendant had not provided any explanation for the course of events between July 7, 2021, and August 4,

2021. *Id.* ¶ 56. The appellate court also noted that defendant, who was represented by counsel at the time he filed his petition, did not explain why a petition that he claimed was properly filed initially was then refiled less than a month later. *Id.* The appellate court further noted that during the hearing on November 1, 2021, the circuit court expressly stated that " '[t]his is within the 90 days, all right, and I've reviewed it.' " *Id.* Defendant's counsel did not object or otherwise disagree that the petition had been ruled upon within the 90-day time period. *Id.* After reviewing the language of the Act and the applicable case law, the appellate court found that, because the petition was not docketed until August 4, 2021, the circuit court had summarily dismissed the petition within the 90-day window in compliance with section 122-2.1(a) of the Act. *Id.* ¶¶ 56-57.

¶ 12   The appellate court also found that defendant's ineffective assistance claims were properly dismissed at the first stage because defendant did not arguably suffer prejudice from counsel's alleged errors. *Id.* ¶ 74. The appellate court also held that defendant failed to set forth a *Brady* violation sufficient to survive summary dismissal and similarly failed to set forth a claim of actual innocence. *Id.* ¶¶ 61, 85.

¶ 13   The dissenting justice would have held that the petition was not only filed but also docketed on July 7, 2021. *Id.* ¶ 104 (D.B. Walker, J., dissenting). In reaching this determination, she would have relied upon the fact that the clerk file-stamped and entered the petition on its case summary sheet, an official record, on July 7. *Id.* ¶ 100. In her view, the payment of a filing fee should not determine when a petition is docketed. *Id.* ¶ 103.

¶ 14   This court allowed defendant's petition for leave to appeal. See Ill. S. Ct. R. 315 (eff. Oct. 1, 2021).

¶ 15                                                    ANALYSIS

¶ 16   Defendant's primary contention is that the circuit court erred by not advancing his petition to the second stage because the court did not rule on it within 90 days after the petition was filed and docketed, as required by section 122-2.1(a) of the Act (725 ILCS 5/122-2.1(a) (West 2020)).[1]

¶ 17   The Act contains a three-stage procedure for relief. *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). Section 122-1(b) of the Act provides that a postconviction proceeding "shall be commenced by filing with the clerk of the court in which the conviction took place a petition *** verified by affidavit." 725 ILCS 5/122-1(b) (West 2020). This section further states that the "clerk shall docket the petition for consideration by the court pursuant to Section 122-2.1 upon his or her receipt thereof and bring the same promptly to the attention of the court." *Id.*

¶ 18   Section 122-2.1 states:

"(a) Within 90 days after the filing and docketing of each petition, the court shall examine such petition and enter an order thereon pursuant to this Section.

* * *

---

[1]Defendant has elected to stand on his petition for leave to appeal and has not filed a brief in this court. See Ill. S. Ct. R. 315(h) (eff. Oct. 1, 2021).

(b) If the petition is not dismissed pursuant to this Section, the court shall order the petition to be docketed for further consideration in accordance with Sections 122-4 through 122-6." *Id.* § 122- 2.1(a), (b).

¶ 19 Within the first 90 days after the petition is filed and docketed, a circuit court shall dismiss a petition summarily if the court determines it is "frivolous or is patently without merit." *Id.* § 122-2.1(a)(2). If the petition is not dismissed as being frivolous and patently without merit, the court must order the petition to be docketed for further consideration. *Id.* § 122-2.1(b).

¶ 20 This court has previously recognized that the time requirement contained in section 122-2.1(a) is mandatory, not directory, and that a trial court's noncompliance with the time requirement renders any summary dismissal void. *People v. Brooks*, 221 Ill. 2d 381, 389 (2006) (citing *People v. Porter*, 122 Ill. 2d 64, 86 (1988)). The summary dismissal of a postconviction petition is reviewed *de novo*. *People v. Brown*, 236 Ill. 2d 175, 184 (2010).

¶ 21 In *Brooks*, the defendant argued that the plain language of section 122-2.1(a) established that the 90-day review period began to run when his postconviction petition was received by the clerk of the circuit court, which in his case was September 13, 2002. *Brooks*, 221 Ill. 2d at 388-89. In contrast, the State believed that the 90-day review period began to run when the clerk of the court placed the case on the call of a judge with authority to rule on it, which had been September 30, 2002. *Id.* at 390. We disagreed with both arguments.

¶ 22 In interpreting section 122-2.1(a), this court recognized that the Act does not define the word "docketing" and, as such, we must consider its plain, ordinary, and popularly understood meaning. *Id.* We noted that, according to Black's Law Dictionary, the word " 'docket,' " when used in its verb form, means " 'to make a brief entry in the docket of the proceedings and filings in a court case *** to abstract and enter in a book *** or to schedule (a case) for trial or some other event.' " *Id.* (quoting Black's Law Dictionary 517 (8th ed. 2004)). We further noted that the standard dictionary meaning of the verb " 'docket' is 'to make a brief abstract of (a legal matter) and inscribe it in a list.' " *Id.* at 390-91 (quoting Webster's Third New International Dictionary 666 (1993)). "Clearly, then, the verb 'docket' connotes more than the mere act of receiving the petition ***." *Id.* at 391. This court held that "[t]o 'docket' requires that the cause be entered in an official record." *Id.* We did not believe that the word "docket" entails that the case be placed on a specific call of a judge, as the State maintained. *Id.* Instead, we held that "[t]he plain meaning of the word connotes that the cause is entered on the court's official docket for further proceedings." *Id.*

¶ 23 Based upon this interpretation of section 122-2.1(a), this court concluded that the date the defendant's petition was filed and docketed for purposes of the Act was September 20, 2002, which was the date the petition was file-stamped by the clerk of the circuit court and the same date the clerk's office entered the case file onto the "half sheet" to be set for further proceedings. *Id.* at 389-91. As such, in *Brooks*, the circuit court's ruling occurred within the statutory time period allowed in section 122-2.1(a). *Id.* at 391.

¶ 24 Turning to the instant case, the "plain meaning of the word [docket] connotes that the cause is entered on the court's official docket for further proceedings," so a petition is not docketed by the "mere act of receiving" it. See *id.* Based upon this definition, defendant's petition was docketed on August 4, 2021, which was the date he paid the filing fee and a file-stamped copy of his petition bearing the August 4 date was entered into the record for further proceedings. The July 7 entry note on the case summary sheet simply states that the petition was filed on

that day and "PC FEE NOT PAID." Consistent with the case summary sheet, the criminal disposition sheet signed by the judge on August 18, 2021, references only the petition dated August 4, 2021, and notes the matter was continued until August 30. Additionally, the Cook County local rules for filing a postconviction petition provide that, to initiate a proceeding under the Act, the petition must be "filed with the clerk *** , accompanied by the docket fee." See Cook County Cir. Ct. R. 15.4(a)(i) (July 1, 1976).

¶ 25 As the State contends, defendant's application of the Act would produce the absurd and unintended result of encouraging postconviction petitioners to neither pay the required filing fee nor seek a fee waiver when appropriate. The fee requirement would be rendered meaningless if a petitioner could ignore it and still compel the circuit court to either adjudicate his or her petition within 90 days or be required to advance it to the second stage. Finally, we emphasize that our application of the term "filing and docketing" under the Act does not harm defendant in this case, who was represented by privately retained counsel who paid the required filing fee on August 4. Nor does our construction of the term harm an indigent petitioner who may seek a waiver of any circuit court fees under Rule 298 (Ill. S. Ct. R. 298 (eff. Sept. 1, 2023)).

¶ 26 Defendant's reliance on *People v. Lentz*, 2014 IL App (2d) 130332, is misplaced. There, the defendant's postconviction petition was filed on August 27, 2012. *Id.* ¶ 2. The docket sheet reflected that the filing fee was not paid until September 6, 2012. *Id.* The docket also reflected that on January 25, 2013, the clerk set a hearing date of January 30 for the petition, and the docket notation for that date stated, " 'placed on call by judge[']s secretary.' " *Id.* The circuit court ultimately set the petition for status on March 15, 2013. *Id.* ¶ 3. On that date, the court summarily dismissed the petition, finding that the 90-day time limit did not commence until January 30. *Id.* The court reasoned that the case was not docketed until the petition was " 'placed on the call of a judge and set for hearing before that assigned judge.' " *Id.*

¶ 27 The parties on appeal in *Lentz* disagreed as to the date the petition was docketed. The State argued that the docketing occurred on January 25, 2013, the date on which the clerk set a hearing date for the petition. *Id.* ¶ 9. Defendant argued, and the appellate court agreed, that the petition had been docketed on August 27, the same day it had been filed. *Id.* In reaching that determination, the *Lentz* court specifically held that it "d[id] not foreclose the possibility that the docketing of a petition—its entry into the official record—could occur on a different day than the filing of the petition." *Id.* ¶ 15. However, as evidence that the petition had been entered into the official record for further proceedings on August 27, 2012, the appellate court relied upon the docket entry stating that the petition had been filed on August 27, 2012, and upon the clerk's letter stating that the filing fee was due. *Id.* The appellate court therefore concluded that "the record reflect[ed] that [the] two acts did occur on the same day, and that the petition was both filed and docketed on August 27, 2012." *Id.*

¶ 28 Defendant contends, like *Lentz*, that his petition was also filed and docketed on the same day, July 7, 2021, and that it must be advanced to the second stage because the circuit court did not rule on it until 117 days later. In contrast to *Lentz*, however, there is no basis to believe that the circuit court of Cook County would have acted any further on the petition defendant submitted on July 7 without the payment of the fee, or the granting of a fee waiver, as required by the local rule. Additionally, as the appellate court found, the course of events between July 7, 2021, and August 4, 2021, is entirely unclear from the record or case summary sheet.

- 6 -

Defendant, who was represented by retained counsel at the time he filed his petition, provides no explanation for why a petition, which he asserts was properly filed and docketed on July 7, was then refiled with the August 4 filing date stamped on the petition in the record.

¶ 29 Consequently, we reject defendant's contention that the circuit court docketed his petition on July 7, 2021. We hold that the trial court complied with the Act and dismissed his petition within 90 days after it was filed and docketed on August 4, 2021.

¶ 30 Next, we turn to defendant's contention that the circuit court erred in summarily dismissing his petition on the merits because his trial counsel was ineffective for failing to call Marquise Gist and Darkenya Donner as witnesses at trial.[2]

¶ 31 The first stage of postconviction proceedings presents a " 'low threshold,' " requiring only that the petitioner plead sufficient facts to assert an arguably constitutional claim. *People v. Johnson*, 2021 IL 125738, ¶ 25. The court must accept as true and liberally construe all the allegations in the petition unless contradicted by the record. *Id.*

¶ 32 A petitioner need only allege sufficient facts to state the "gist" of a constitutional claim for the petition to be advanced to the second stage. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A petition may be dismissed as frivolous or patently without merit only if it "has no arguable basis either in law or in fact." *Id.* at 11-12. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16.

¶ 33 Under the Act " 'a petition alleging ineffective assistance [of counsel] may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced.' " (Emphases omitted.) *People v. Tate*, 2012 IL 112214, ¶ 19 (quoting *Hodges*, 234 Ill. 2d at 17).

¶ 34 Concerning Gist's affidavit, he would have testified that he was with defendant at a park near the shooting during most, but not all, of the relevant time period surrounding the crime. Gist would therefore only provide a partial alibi for defendant. He would have testified that defendant dropped him off before he rode his bicycle to a nearby gas station to get a "blunt." Gist would have further testified that, after the two separated, defendant later returned on his bicycle and that they proceeded to an abandoned building to smoke. Additionally, we note that Gist's affidavit, in contrast to the representations defendant makes in his petition, does not state that he provided any of this information to defendant's attorney before trial or that he was available to testify.

¶ 35 As for Donner, her affidavit does not establish that she observed the shooting or that either of the two teenagers she saw in the neighborhood committed the crime. Rather, her affidavit asserts that she saw from a residence in her former neighborhood two teenage boys, a block or two away from where the shooting occurred, walk across West 71st Street and then walk north through a nearby vacant lot. Neither of the two teenagers was defendant. Moments later, she

---

[2]Defendant's petition also included a claim of ineffective assistance of counsel predicated on his attorney's alleged failure to properly cross-examine Leon and Thomas. He also raised actual innocence and *Brady* violation claims. However, his petition for leave to appeal, which he has chosen to stand on as his brief, makes no argument on either point. Those claims are thus forfeited and not addressed. See *People v. Aljohani*, 2022 IL 127037, ¶ 61 (requiring an appellant to develop his or her argument and to cite relevant authority (citing Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018))).

heard gunshots coming from the vicinity of the crime and then observed the two boys walk back through the vacant lot located on the south side of West 71st Street.

¶ 36　　As the appellate court highlighted, the evidence at defendant's bench trial showed that Thomas and Leon both saw the shooter from a close distance, that the two positively identified defendant as the shooter in a photo array or lineup shortly after the shooting and at trial, and that Thomas and Leon recognized defendant from the neighborhood and knew him by a nickname. Also, Chicago police detective Marc Delfavero was asked on cross-examination whether he spoke to a woman named "Kenya Donner" about a potential second suspect. He responded that a woman, whose name he could not recall, provided him with information that pointed to another suspect. When Delfavero was asked whether "Ms. Donner had a[n] exhaustive conversation with you and your partner," he replied "Yes" and testified that she came to the police station and voluntarily provided him with the information.

¶ 37　　We find defendant was not arguably prejudiced by counsel's failure to call Gist and Donner as witnesses. Gist was only able to provide a partial alibi for defendant on the day of the shooting, Donner did not witness the shooting itself, and when finding defendant guilty of the crimes, the circuit court knew that the police had been provided with information concerning another suspect consistent with Donner's affidavit. Based upon the strength of the victims' identification of defendant as the shooter, we cannot say that the proposed testimony by Gist and Donner would arguably have changed the outcome of the trial.

¶ 38　　　　　　　　　　　　　　　　　CONCLUSION

¶ 39　　Accordingly, we affirm the judgment of the appellate court, which affirmed the circuit court's judgment.

¶ 40　　Judgments affirmed.